IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| FRANK L. TAYLOR, | ) Civil Action No. 3:08-3307-MJP-JRM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| IN HOME HEALTH, LLC, | ) |
| Defendant. | ) |

Plaintiff, Frank L. Taylor ("Taylor"), filed this pro se action on September 30, 2008.[1] Defendant is In Home Health, LLC ("IHH"). Taylor alleges that he was discriminated against based on his sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[2] IHH filed a motion to dismiss and for sanctions on December 14, 2009. Taylor, because he is proceeding pro se, was advised on December 15, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion could result in the dismissal of his complaint. Taylor filed a response on January 15, 2010, and IHH filed a reply on January 25, 2010. On January 29, 2010, IHH filed a motion for summary judgment. A second Roseboro order was issued on February 1, 2010. Taylor filed a response on February 26, 2010, and IHH filed a reply on March 5, 2010.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Local Civil Rules 73.02(B)(2)(e) and (g) DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

[2] Taylor also brought a claim under the Whistle Blower False Claims Act, 31 U.S.C. § 3729. This claim was dismissed by the Honorable Matthew J. Perry, Jr., Senior United States District Judge, on September 25, 2009.

# FACTS

1. On approximately March 20, 2007, Taylor applied for employment with IHH as an office manager. Taylor Dep. 60-61, Ex. 1.

2. Taylor states he was hired for the position of office manager by Marisette Hasan ("Hasan"), the former Administrator for IHH, but that on his start date he was not given that position. On May 7, 2007, Taylor signed an acceptance letter for the job of team coordinator (not office manager) and began his employment with IHH. Taylor Dep. 23-25, 69-72, Ex. 4-5.

3. Taylor attended Office Manager 101 training in Toledo, Ohio from June 25-29, 2007, at the HCR Manor Care corporate office. Taylor Dep. 110-113, Ex. 20.

4. A corporate trainer noted that Taylor put forth visible effort, but he "appeared to be overwhelmed at times and seemed to have difficulty understanding all of the materials presented." Taylor failed two of his tests, including the accounts payable test. The trainer recommended that Taylor receive further training. Taylor Dep. 115-119, Ex. 22.

5. On June 27, 2007, Taylor was promoted to the position of Office Manager, with an effective date of July 5, 2007. The promotion was approved, in part, by Hasan. Taylor Dep. 106-109, Ex. 19.

6. Taylor admitted he had some difficulty handling some of the duties and responsibilities of the Office Manager position. He claims he was not given the necessary training, but admitted he never requested any additional training or help from his supervisor. Taylor Dep. 119-122.

7. On August 28, 2007, Taylor was offered, and accepted, a demotion to the position of Senior Team Coordinator. Taylor Dep. 123-126, Ex. 23.

8. On approximately August 29, 2007, Taylor received and signed a Human Resources Addendum which provided that the responsibilities of a Senior Team Coordinator included payroll processes and some day-to-day human resources functions. The position reported directly to the Office Manager.[3] Taylor Dep. 126-127, Ex. 24.

9. On September 19, 2007, Taylor received and signed a final written warning ("Employee Warning Notice") as a result of payroll errors involving two nurses, identified by Taylor as Brenda Quick ("Quick") and Deborah Sloan ("Sloan); six home health aides; and one in-home patient unit (IPU) employee. On the Employee Warning Notice, Taylor was advised that he would no longer be responsible for payroll when a new Office Manager assumed those duties. Hasan Decl., Para. 11; see Taylor Dep. 34, 127-130, 132, Ex. 25.

10. Taylor disagreed with the warning,[4] but did not indicate his disagreement in the Employee Comments section of the Employee Warning Notice, report his disagreement to Hasan, or utilize any of the other reporting procedures[5] available to him. Taylor Dep. 132-141.

11. On September 20, 2007, Diana Kruse ("Kruse") accepted the position of Office Manager. She previously held this position in 2005 and part of 2006. Hasan Decl., Para. 12.

12. On approximately September 25, 2007, Santa Lush (a Regional Human Resources Representative) and Hasan met with Taylor and told him that the Regional Director of

---

[3] At the time of Taylor's demotion, the position of Office Manager was vacant.

[4] Taylor alleges that the two nurses who were overpaid falsified their time sheets to show that they were "on call" and that the nursing supervisors signed off on these time sheets. He claims he warned the Administrator that something was "not right." See Plaintiff's Opp. Mem.(Doc. 66) at 10.

[5] On his hiring date, Taylor signed an acknowledgment of receipt of Defendant's Handbook, which contained an Equal Employment Opportunity policy, a separate policy prohibiting discrimination and harassment, and an outline of alternative avenues for reporting concerns of alleged discrimination to the company. Taylor Dep. 77-78, Ex. 8.

Operations and the General Manager of the Southeast Region decided to eliminate the Senior Team Coordinator position in an effort to streamline the office processes and duties (HR, payroll, accounts payable, etc.) and to reduce costs. Hasan Decl., Para. 13.

13. Taylor was given the option to resign on September 25, 2007, which he declined the next day. He was terminated on September 26, 2007. Taylor Dep. 34-36, 141-146, Ex. 26-27.

14. Prior to his termination, Taylor took (without authorization) a number of documents from IHH in an effort to support his claims. Taylor Dep. 223-241, Exs. 42-47.

15. Taylor filed a Charge with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") on approximately October 5, 2007. Plaintiff's Dep. 174-175, Ex. 31.

16. SCHAC issued a "no cause" finding and a Dismissal and Notice of Right to Sue on August 29, 2008. Plaintiff's Dep. 191, Ex. 34.

17. The EEOC adopted SCHAC's findings and issued a Dismissal and Notice of Rights on September 10, 2008. Plaintiff's Dep. 192-194, Ex. 35.

### I. **MOTION TO DISMISS AND FOR SANCTIONS**

IHH asserts that this action should be dismissed pursuant to Federal Rules of Civil Procedure 37 and 41(b) as well as the "inherent powers" doctrine because Taylor admits that he took documents from IHH and he submitted these documents as attachments to his pleadings in this action. The documents in question are Exhibits 42-47 of Taylor's deposition and include the time sheets of IHH employees including those of Quick, a "payroll creation" report, an "RN on Call Reimbursement" sheet, a wage repayment form for Quick, an HCR-Manor Care Market Analysis Form concerning salaries, and Kruse's September 19, 2007 acceptance form for the position of Office Manager. IHH

4

asserts that Taylor should be required to immediately return these documents and should be prohibited from using them in this action.

Pursuant to Rule 37, the court may impose sanctions, including dismissal of the action, for the failure to obey a discovery order. See Fed. R. Civ. P. 37(b)(2). A complaint may be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied 493 U.S. 1084 (1990) and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). IHH concedes that there is not a failure to obey a court order here, but argues that Taylor submitted documents which he obtained outside the discovery rules, even though he knew they were taken without IHH's authorization.

In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

(1) the degree of plaintiff's responsibility in failing to respond;

(2) the amount of prejudice to the defendant;

(3) the history of the plaintiff in proceeding in a dilatory manner; and

(4) the existence of less drastic sanctions other than dismissal.

Davis v. Williams, 588 F.2d 69 (4th Cir. 1978). In addition, it has been held that a party should receive a warning that failure to obey an order of the Court could result in dismissal. Ballard, 882 F.2d at 95-96, cert. denied, 493 U.S. 1084 (1990). The standards for a Rule 37(b)(2) dismissal and a Rule 41(b) dismissal for failure to obey an order to respond to discovery are "virtually the same[.]" Carter v. University of West Virginia System, 1994 WL 192031, No. 93-1905, *2 (4th Cir. May 16, 1994); see also Anderson v. Foundation for Advancement, Educ. & Employment of Am. Indians, 155

F.3d 500, 504 (4th Cir.1998)(In determining what sanctions to impose under Rule 37, court must consider: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.").

Here, dismissal appears to be too harsh a sanction where there was not a failure to obey a discovery order and there was no warning that a failure to obey an order of the Court could result in dismissal. Under the factors outlined in Davis, supra, it appears that there are less drastic sanctions other than dismissal, including requiring Taylor to return the documents in question to IHH and to not allow them to be used in this action. See, e.g. Fayemi v. Hambrecht and Quist, Inc., 174 F.R.D. 319, 323 (S.D.N.Y. 1997)(noting that where an employee improperly obtained material outside of the discovery process, the appropriate sanction was to preclude the employee from using the material in litigation).

Taylor argues that he should be allowed to use these documents under the exclusionary rule. The exclusionary rule is a "judicially created remedy designed to safeguard Fourth Amendment rights." United States v. Leon, 468 U.S. 897, 906 (1984). "The rationale behind the exclusionary rule is 'to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved,' and application of the rule is 'restricted to those areas where its remedial objectives are thought to be most efficaciously served.'" Wren v. Towe, 130 F.3d 1154, 1158 (5th Cir.1997) (quoting United States v. Janis, 428 U.S. 433,(1976)). Taylor's Fourth Amendment rights are not at issue in this civil case. Further, the Supreme Court of the United States has "never applied the exclusionary rule to civil cases, state or federal." Nixon v. Applegate,

2008 WL 471677, 2008 U.S.Dist. LEXIS 13016, 11-13 (D.S.C. Feb. 19, 2008)(citing Wren, 130 F.3d at 1154).

Thus, it is recommended that IHH's motion be denied as to its request for dismissal and granted as to its request that the documents (including any copies) contained in Exhibits 42-47 of Taylor's deposition be returned to IHH and that these documents not be used in this action.[6]

## II. MOTION FOR SUMMARY JUDGMENT

Taylor alleges claims under Title VII that, based on his sex, he was terminated from employment at IHH and he was discriminated against with respect to his pay, training, discipline, and hiring.[7] IHH contends that it is entitled to summary judgment because: (1) Taylor fails to establish a claim for sex discrimination as to his termination; and (2) Taylor failed to exhaust his administrative remedies as to his other claims.

### A. Summary Judgment Standard

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take

---

[6] Although exclusion of these materials is recommended, the undersigned has considered all of the materials submitted by Taylor in preparing this report and recommendation.

[7] In his memoranda in opposition to IHH's motion to dismiss and IHH's motion for summary judgment, Taylor appears to assert additional claims under state law, including claims for defamation, libel, breach of contract, and termination in violation of public policy. He also appears to assert a breach of due process claim. These claims, which were not included in the Complaint, are not properly before the court. Further, to the extent that Taylor has asserted a claim for breach of due process under 42 U.S.C. § 1983, he fails to show that IHH is a state actor. To the extent that Taylor has properly brought any state law claims, it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that they be dismissed sua sponte as Taylor fails to establish any of his federal claims (as discussed below).

7

special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra.

Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

### B. Discriminatory Discharge

Taylor alleges that he was terminated based on his sex in violation of Title VII. IHH contends that it is entitled to summary judgment as to this claim because Taylor fails to establish a prima facie case of sex discrimination as to his termination, it has articulated a legitimate, non-discriminatory reason for its action, and Taylor fails to show pretext.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment, a plaintiff must come forth with either direct evidence of discrimination or establish a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802. Taylor has submitted no direct evidence of discrimination based on his sex. A plaintiff may establish a prima facie case of discriminatory discharge under Title VII by showing: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time the employer took the adverse employment action, he was performing at a level that met his employer's legitimate expectations; and (4) the position was filled by a similarly qualified applicant outside the protected

class or other employees who are not members of the protected class were retained under apparently similar circumstances. See Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004); King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). When a plaintiff makes a showing sufficient to support a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. McDonnell Douglas, 411 U.S. at 802 . If the employer produces a legitimate reason for the action, the burden once again shifts to the plaintiff to show that the employer's rationale is a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

(1) Prima Facie Case

Taylor fails to establish a prima facie case of discriminatory discharge because he has not shown that he was meeting IHH's legitimate expectations at the time of his termination. As discussed above, Taylor was demoted from Business Officer Manager on August 28, 2007. Less than a month later, he received a final written warning for errors in his position as Senior Team Coordinator. These errors involved the pay of nurses, health aides, and an IPU employee. See Taylor Dep., Ex. 25. Taylor argues that he should not have received the final written warning because the two nurses he was written up for overpaying falsified their time sheets and their supervisors signed off on the sheets. Even if Taylor could show that this is true, he has not disputed his own role in the payroll process which resulted in overpayment and he has not disputed the warning as to the health aides and the IPU employee. Further, it is the employer's perception of job performance, and not the employee's perception that is controlling. See Dejarnette v. Corning, Inc., 133 F.3d 293 (4th Cir. 1998); Smith v. Flax, 618 F.2d 1062 (4th Cir. 1980); Shore v. A. W. Hargrove Ins. Agency, Inc., 873 F. Supp. 992, 998 (E.D. Va. 1995); Simmons v. Marsh, 690 F. Supp. 1489,

1493 (E.D.Va. 1988), aff'd, 852 F.2d 566 (4th Cir.), cert. denied, 488 U.S. 996 (1988). Even if Taylor could show that he was meeting IHH's legitimate expectations, he fails to meet the fourth prong of his prima facie case. He has not shown that anyone else was hired as a Senior Team Coordinator to replace him.[8]

### (2) Legitimate, Non-Discriminatory Reason/Pretext

Even if Taylor has established his prima facie case of discriminatory discharge, IHH has articulated a legitimate, non-discriminatory reason for its actions. IHH asserts that Taylor was terminated because IHH eliminated his position as Senior Team Coordinator after it hired a new Office Manager and merged the human resources and payroll duties into that position to save costs. Plaintiff's Dep. Ex. 27, 32; Hasan Decl., Para. 13.

Taylor claims that he was not terminated for this reason, but instead was terminated as a result of the payroll error for which he received the Employee Warning Notice. He has, however, presented nothing other than his own belief that this was the reason for his termination. Further, Taylor conceded that IHH could have eliminated his position as Senior Team Coordinator because the duties he had been performing were now being performed by the Office Manager. Taylor Dep. 144.

---

[8]Taylor may be attempting to argue that his termination was discriminatory because he was terminated and Kruse, the office manager, remained. When an action concerns a reduction in force ("RIF"), a plaintiff may establish a prima facie case by offering proof that he: (1) was protected under Title VII; (2) was selected for discharge; (3) was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a lower level than that at which he was performing. Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir.1993)(age discrimination); Corti v. Storage Tech. Corp., 304 F.3d 336, 341, n. 6 (4th Cir. 2002)(sex discrimination). Here, Taylor fails to show that he was performing at a level substantially equivalent to Kruse or that Kruse was performing at a lower level than he was performing.

C. Exhaustion of Administrative Remedies/Disparate Discipline

IHH contends that Taylor only exhausted his administrative claims as to his termination claim and failed to exhaust his administrative remedies as to his remaining claims of sex discrimination with respect to his pay, training, discipline, and hiring. Taylor has not addressed IHH's argument.

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000) (citing King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir.1976)). The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent ... lawsuit." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (discussing Title VII; see also Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (If "the claims raised ... exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (discussing Title VII).

Taylor failed to exhaust any claims as to his hiring, training, or pay. In his Charge, he checked the box indicating that he alleged discrimination based on sex and wrote that the alleged discrimination took place on September 26, 2007 (as both the earliest and latest date). The "Continuing Action" box was not checked. Taylor Dep., Ex. 31. The only alleged adverse action that appears to have occurred on that date is Taylor's termination. IHH, however, may have also

been put on notice of Taylor's claim of disparate discipline, as he wrote in the "Particulars" section of the Charge:

> I. I was terminated on September 26, 2007
>
> II. The respondent stated I was terminated because I paid nurses incorrectly.
>
> III. I contend that I did not pay nurses incorrectly and it was not the second incident of me allegedly not paying nurses correctly. **The payroll sheet I prepared was signed off on by the appropriate managers who were female, yet they were not disciplined. I contend females who placed inappropriate times on their sheets were not disciplined even though I raised questions about their times.** I was replaced by a female.
>
> IV. I therefore believe that I have been discriminated against because of my sex (male) in violation of the South Carolina Human Affairs Law, as amended and Title VII of the United States Civil Rights Act of 1964, as amended.

Taylor Dep., Ex. 31 (emphasis added).

To the extent that Taylor has exhausted his administrative remedies as to his disparate discipline claim, it is recommended that the claim be dismissed sua sponte as Taylor fails to establish his prima facie case. To establish a prima facie case of disparate discipline, a plaintiff must show "(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Lightner v. City of Wilmington, N.C., 545 F.3d 260 (4th Cir. 2008), citing Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (adapting the McDonnell Douglas framework for the employee discipline context).

Here, Taylor fails to show that he was disciplined more severely than a similarly situated employee outside the protected group. In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see

also Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

Taylor appears to argue that nurses Quick and Sloan falsified their timecards, but were not disciplined. He has not shown that these nurses were similarly situated to him. These nurses did not have the same position as he held and they appear to have been directly supervised by someone other than Taylor's direct supervisor. Taylor appears to argue that these employees engaged in similar or worse conduct than he engaged in because they falsified their timecards. He, however, fails to show that the timecards were falsified. He has submitted copies of timecards, but has presented nothing other than his own assertion to show that they were falsified. Taylor argues that he has shown that Quick falsified her timecard because she signed a wage repayment agreement. He fails to show that she signed this because she falsified her timecard (it may show that she was overpaid wages, but it does not show the reasons behind the overpayment). Further, Taylor received

14

the final warning because he overpaid these two nurses in addition to incorrectly paying home health aides and an IPU employee. The warning also noted that it was the second incident of incorrect payment. Additionally, Taylor, who was demoted prior to this "final warning" and was terminated after his position was eliminated, fails to show any adverse action as a result of this disciplinary action.

## **CONCLUSION**

Based on the foregoing, it is recommended that Defendant's motion to dismiss and for sanctions (Docs. 54) be **denied, in part**, as to Defendant's motion to dismiss and **granted, in part**, as to Defendant's request for the sanction of the exclusion and return of certain documents (as discussed herein). It is also recommended that Defendant's motion for summary judgment (Doc. 61) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

June 28, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).